UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

THE CHARTER OAK FIRE INSURANCE
COMPANY,

        Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

        Defendant.

Civil Action No. 3:25-cv-00409

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW the Plaintiff, THE CHARTER OAK FIRE INSURANCE COMPANY ("Charter Oak"), by and through its undersigned counsels, and files the following Complaint for Declaratory Judgment requesting judgment in its favor and against the Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), and in support of such request states as follows:

### Nature of the Action

1. In this action, Charter Oak seeks a declaration that (a) Liberty Mutual is obligated to defend and indemnify A.L.L. Construction, Inc. on a primary and non-contributory basis, as an additional insured under a policy of insurance issued by Liberty Mutual to West Virginia Paving, Inc. ("West Virginia Paving"), and (b) Liberty Mutual is obligated to reimburse Charter Oak for all defense and indemnity costs incurred on behalf of A.L.L. Construction, Inc. ("A.L.L. Construction") in connection with an underlying action styled *Charlotte Smith v. Howard Lee Barbour, et al.*, filed on January 20, 2022, in the Circuit Court of Kanawha County, West Virginia, Civil Action No. CC-20-2022-C-52, and transferred to Circuit Court of Cabell County, West Virginia, on or about August 8, 2023, at Civil Action No. CC-06-2023-C-322 (the "Underlying Action"), asserting claims for injuries sustained by Charlotte Smith (the "Claimant").

## Parties

2. At all times relevant hereto, Charter Oak was and is a Connecticut corporation duly licensed and authorized to write insurance and conduct business in the State of West Virginia with a principal place of business in Hartford, Connecticut.

3. Upon information and belief, at all times relevant hereto, Liberty Mutual was and is a Massachusetts corporation duly licensed and authorized to write insurance and conduct business in the State of West Virginia with a principal place of business in Boston, Massachusetts.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and under the Declaratory Judgment Act, 28 U.S.C. § 2201, as the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000.00.

5. The United States District Court for the Southern District of West Virginia, Huntington Division is the proper venue for this action under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

6. An actual justiciable controversy exists between the parties as to the coverage afforded under an insurance policy issued by Defendant Liberty Mutual.

7. Charter Oak has no adequate remedy at law.

## The Insurance Policies

8. Charter Oak issued to A.L.L. Construction an insurance policy bearing policy no. DT-CO-5616B07A-COF-19 providing commercial general liability coverage for the policy period August 27, 2019 through August 27, 2020 (the "Charter Oak Policy"). (*See* Ex. 1, Charter Oak Policy).

9. Subject to certain terms, conditions, and exclusions, the Charter Oak Policy generally provides coverage for bodily injury that takes place during the policy period and is caused by an accident. (*See* Ex. 1).

10. The Charter Oak Policy contains excess "other insurance" clauses that provide that coverage under the Charter Oak Policy is excess over any other coverage available to its insured as an additional insured. (*See* Ex. 1, at page 15 of form CG T1 00 02 19).

11. Defendant Liberty Mutual issued an insurance policy to CRH Americas, Inc. bearing policy no. TB2-C81-004095-119 for the policy period September 1, 2019 through September 1, 2020 (the "Liberty Mutual Policy"). (*See* Ex. 2, Declarations and pertinent schedules and endorsements of the Liberty Mutual Policy).[1]

12. The Liberty Mutual Policy also provides coverage to West Virginia Paving, Inc. pursuant to its Commercial General Liability Declarations – Extension Schedule – Named Insureds Form LCS 00 04 10 14 that lists West Virginia Paving as a Named Insured. (*See* Ex. 2).

13. West Virginia Paving, Inc. is listed on the Named Insured Schedule of the Liberty Mutual Policy. (*See* Ex. 2, at p. 13 of the Policy).

14. Subject to certain terms, conditions, and exclusions, the Liberty Mutual Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" with the insurance applying to "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" during the policy period. (Ex. 2, at page 2 of form CG 00 01 04 13).

---

[1] The full Liberty Mutual Policy is voluminous and will be produced during discovery.

15. The Liberty Mutual Policy provides additional insured coverage to A.L.L. Construction on a primary and non-contributory basis by operation of two Blanket Additional Insured Endorsement forms.

16. The Liberty Mutual Policy contains Blanket Additional Insured Endorsement forms[2] CG 20 33 04 13 and CG 20 37 07 04, (collectively the "Blanket AI Endorsements") inter alia.

17. Form CG 20 33 04 13 provides in relevant part that:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

---

[2] Liberty Mutual Policy also has Blanket Additional Insured Endorsement forms CG 20 10 04 13, CG 20 26 04 13, CG 20 37 04 13, CG 20 38 04 13, CG 20 10 07 04 and CG 20 10 10 01 which may be applicable here as well.

4

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement you have entered into with the additional insured; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

(Ex. 2, at form **[CG 20 33 04 13])**

18.     Form CG 20 37 07 04 provides in relevant part that:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| **Individually named additional insureds where this version of the form is specifically required by written contract** | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

(Ex. 2, at form CG 20 37 07 04.)

## Background Facts

19. On August 17, 2017, A.L.L. Construction entered into a prime contract with the West Virginia Department of Transportation, Division of Highways ("WVDOT") to serve as a general contractor on a project located at Cabell County, designated as the "Melissa-Huntington Road" project.

20. On December 8, 2017, A.L.L. Construction entered into a Subcontract Agreement with West Virginia Paving, Inc. (hereinafter the "Subcontract") to perform paving as part of the Melissa-Huntington Road project. (See Ex. 3, Subcontract Agreement)

21. Section 3, paragraph A(7) of the Subcontract states as follows:

The subcontractor [West Virginia Paving, Inc.] shall maintain CGL coverage for itself and all additional insureds for the duration of the project, and for at least 1 year after completion of the work. The CGL policy shall provide coverage for liability arising from premises, operations, blanket contractual of a type that provides coverage for the indemnification clause in this subcontract, independent contractors, products-completed operations, and personal and advertising injury. The additional insured endorsement shall provide for primary, non-contributory coverage, and complete operations coverage.

(Ex. 3 at 1).

22. Section 3, paragraph B of the Subcontract states as follows:

Subcontractor [West Virginia Paving, Inc.] agrees to name such persons, firms and or/or corporations as insured in said policies as Contractor [A.L.L. Construction, Inc.] may require.

All of the above insurance coverage will be written through a company or companies acceptable to the Contractor. If required by the Owners' insurance specifications in the contract between Contractor and Owner, subcontractor shall use an "A" rated carrier for coverages. The Certificate of Insurance provided shall be Accord Form 25-S or equivalent. Said Certificate of Insurance shall be prepared so as to:

1. Adequately describe the project on which Subcontractor is performing work;

2. Specifically reference the fact that the Contractor and Owner are "additional insureds;"

> 3. Obligate the insurer to notify the Contractor at least 30 days in advance of cancellation or material change in policy or policies.

Ex. 3 at 2.

23. Section 5 of the Subcontract incorporates by reference and makes part of the Subcontract various exhibits, including insurance provisions holding "Insurance certificate naming A.L.L. Construction, Inc. as additional insured and referencing project…" ( *See* Ex. 3 at 2).

24. Section 11.3 of the Subcontract further sets forth West Virginia Paving's contractual indemnification obligations as follows:

> To the fullest extent permitted by law, Subcontractor agrees to indemnify and hold harmless the Contractor and Owner, their respective agents, officers, shareholders and employees from and against all claims, demands, actions, causes of action, damages, losses and expenses, including but not limited to attorneys' fees, arising or resulting (or alleged to arise or result), in whole or in part, from:
>
> (a) Any act or omission of Subcontractor, its subcontractors, or any other person furnishing labor, services, materials or equipment with respect to the Subcontract Work as well as anyone employed directly or indirectly by any of them or anyone for whose acts or omissions they may be liable, regardless of whether such claim, demand, action, cause of action, damage, loss or expense may have or is alleged to have arisen or resulted from any act or omission of the Contractor or Owner or their agents, consultants or employees; provided, however, Subcontractor's obligations hereunder shall not be construed to apply to any claim, demand, action, cause of action, damage, loss and expense arising solely from the negligence of the Contractor or Owner;
>
> (b) Subcontractor's failure to pay for labor, materials, equipment or supplies or amounts due its subcontractors;
>
> (c) An alleged breach of the Prime Contract for which Subcontractor is, in whole or in part, responsible; and
>
> (d) The infringement or alleged infringement of any patent by Subcontractor.
>
> This general indemnification obligation shall apply particularly, but not exclusively, to the claims of any other subcontractor against any of the Indemnitees for the acts, failure to act, omissions, negligence, or fault of this Subcontractor, and this Subcontractor shall have no claim against the Indemnitees for the acts, failure to act, omissions, negligence, or fault of any other subcontractor.

> Subcontractor's indemnity obligation set forth above shall extend to the claims of any employee of Subcontractor, its subcontractors or any other person furnishing or employed by a person furnishing labor, services, material or equipment with respect to the Subcontract Work. The scope and amount of Subcontractor's indemnity obligation with respect to such claims shall not be limited by any applicable workers' or workmen's compensation laws.
>
> Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state, and local laws, ordinances and regulations (hereinafter collectively referred to as the "laws") applicable to Subcontractors Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged enterprise, safety and all other laws with which Contractor must comply according to the Contract Documents.
>
> Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

(Ex. 3 at 6).

25. Pursuant to the terms of the Subcontract and upon information and belief, Certificate of Liability Insurance form(s) was (were) completed listing A.L.L. Construction as an additional insured where required by written contract under the commercial general liability policies issued by Liberty Mutual to West Virginia Paving, including the Liberty Mutual Policy.

26. On August 4, 2020, Claimant Charlotte Smith allegedly fell and was injured leaving her home located at 3345 16th Street, Huntington, Cabell County, West Virginia ("Property").

27. Claimant initiated the underlying suit in Kanawha County Court in connection to the Underlying Action, on or about January 20, 2022, against A.L.L. Construction, West Virginia Paving, Inc., Howard Lee Barbour, as the owner of the Property ("Barbour"), WVDOT and Cherokee Enterprise Corporation ("Cherokee") (collectively, "Underlying Defendants") seeking recovery of damages from those alleged injuries. (See Ex. 4, Smith Second Amended Complaint).

28. The Underlying Defendants in the Underlying Action were alleged to have been involved in the "Melissa-Huntington Road" construction project, which included the Property where Claimant resided. (Ex. 4, at ¶ 4).

29. Claimant alleges those construction activities created an unsafe egress to and from the Property. In particular, the complaint alleges that the defendants, while performing work associated with paving and/or street repair on 16th Street Road, and specifically 3345 16th Street, changed her normal and safe walkway and negligently and carelessly failed to provide Plaintiff with a safe pedestrian access and reasonable safe walkway from her residence. (Ex. 4, at ¶ 12).

30. Claimant claims that she fell while walking on a rocky path adjacent to newly-laid asphalt after being directed not to walk on the asphalt. The asphalt was laid by West Virginia Paving.

31. Barbour and West Virginia Paving resolved Claimant's claims against them and were dismissed in the Underlying Action. However, the contractual claims of A.L.L. Construction against West Virginia Paving were specifically preserved.

32. WVDOT was dismissed under the doctrine of sovereign immunity in the Underlying Action.

33. Following dismissal of Barbour, West Virginia Paving and WVDOT, A.L.L. Construction moved to dismiss Claimant's remaining claims for improper venue.

34. The Kanawha County Court in the Underlying Action denied A.L.L. Construction's Motion to Dismiss but agreed to transfer the Underlying Action to the proper venue of Cabell County by Order dated August 15, 2023.

**Tenders and Liberty Mutual's Response**

35. A.L.L. Construction has previously tendered its defense and indemnity in connection to the Underlying Action to West Virginia Paving and its insurer, Liberty Mutual, but West Virginia Paving has ignored those requests.

36. Charter Oak, on behalf of A.L.L Construction, also tendered defense and indemnity directly to Liberty Mutual in connection to the Underlying Action, but Liberty Mutual has ignored the tender request.

37. Charter Oak has provided and continues to provide a defense for A.L.L. Construction, Inc. in the Underlying Action.

## COUNT I

**Charter Oak's Cause of Action for Declaratory Relief Against Liberty Mutual**

38. Charter Oak repeats and realleges the allegations contained in paragraphs 1-37 above as if set forth here in their entirety.

39. West Virginia Paving is a Named Insured under the Liberty Mutual Policy.

40. Blanket Additional Insured Endorsement form **CG 20 33 04 13** amends the Liberty Mutual Policy to include as additional insureds any person or organization for whom [West Virginia Paving] are performing operations when [West Virginia Paving] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

41. Blanket Additional Insured Endorsement form CG 20 37 07 04 amends the Liberty Mutual Policy to include as additional insureds the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this

endorsement performed for that additional insured and included in the "products-completed operations hazard.

42. The Subcontract required West Virginia Paving to obtain CGL coverage, and name A.L.L. Construction as an additional insured on the policy.

43. A.L.L. Construction qualifies as an additional insured under the Liberty Mutual Policy for the claims asserted against them in connection to the Underlying Action under both of the aforementioned endorsements.

44. A.L.L. Construction is entitled to a defense under the Liberty Mutual Policy issued to West Virginia Paving, as well as to indemnification thereunder for any verdict or judgment rendered against A.L.L. Construction in the Underlying Action.

45. The coverage afforded A.L.L. Construction under the Liberty Mutual Policy is primary to and non-contributory with any coverage provided by the Charter Oak Policy.

46. Accordingly, Charter Oak seeks a declaration that (i) Liberty Mutual has an obligation to defend A.L.L. Construction as an additional insured under the Liberty Mutual Policy with respect to the Underlying Action; (ii) the coverage provided to A.L.L. Construction by the Liberty Mutual Policy is primary; and (iii) the obligations of Charter Oak to A.L.L. Construction in the Underlying Action are excess to proper exhaustion and full payment of the limits of the Liberty Mutual Policy.

47. In addition, Charter Oak seeks an award at law and in equity against Liberty Mutual for recovery of all sums Charter Oak has incurred and continues to incur in the defense of A.L.L. Construction in the Underlying Action because the coverages provided by the Liberty Mutual Policy are primary to and non-contributory with any coverage provided by Charter Oak.

**Prayer for Declaratory Relief**

Wherefore, Charter Oak prays that judgment be entered as follows:

1. Declaring that the Liberty Mutual Policy was in full force and effect on the date of the incident alleged in the Underlying Action.

2. Declaring that all terms and conditions of the Liberty Mutual Policy have been complied with and met in connection to additional insured coverage for the Underlying Action.

3. Declaring that the incident alleged in the Underlying Action and allegations in the Underlying Action fall within the coverage afforded by the Liberty Mutual Policy.

4. Declaring that an actual controversy exists between Charter Oak and Liberty Mutual with respect to Liberty Mutual's duty to defend and to indemnify A.L.L. Construction in connection with the Underlying Action.

5. Declaring that Liberty Mutual owes a duty to defend A.L.L. Construction in connection with the Underlying Action.

6. Declaring that Liberty Mutual owes a duty to indemnify A.L.L. Construction in connection with the Underlying Action.

7. Declaring that Liberty Mutual's coverage obligations to A.L.L. Construction in connection with the Underlying Action are primary.

8. Declaring that Charter Oak's coverage obligations in connection to A.L.L. Construction under the Charter Oak Policy are excess and non-contributory to those of Liberty Mutual with respect to the Underlying Action.

9. Granting an award in favor of Charter Oak against Liberty Mutual for all sums Charter Oak has paid in defending A.L.L. Construction in the Underlying Action.

10. Granting an award in favor of Charter Oak for the costs of suit incurred herein.

11. Granting such other and further relief as the Court may deem just and proper.

Dated: July 1, 2025

**RESPECTFULLY SUBMITTED:**

HOUSTON HARBAUGH, P.C.

By: /s/ *Christopher M. Jacobs*
    Christopher M. Jacobs
    WV I.D. No. 9285
    jacobscm@hh-law.com
    Lisa R. Whisler
    WV I.D. No. 11949
    whislerlr@hh-law.com
    Three Gateway Center
    401 Liberty Avenue, 22nd Floor
    Pittsburgh, PA  15222
    Telephone:  412.281.5060
    Facsimile:   412.281.4499
    ***(Counsel for The Charter Oak Fire Insurance Company)***