IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

THE CHARTER OAK FIRE
INSURANCE COMPANY,

           Plaintiff,

v.                                              CIVIL ACTION NO. 3:25-0409

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Liberty Mutual Fire Insurance Company's Motion to Dismiss (ECF 7). The Court **DENIES** the Motion.

**BACKGROUND**

A.L.L. Construction, Inc. is the general contractor for a construction project in Huntington, West Virginia. ECF 1, Compl. ¶ 19. A.L.L. subcontracted West Virginia Paving, Inc. to provide paving for the project. *Id.* ¶ 20.

After construction began, a woman named Charlottee Smith allegedly fell and was injured due to A.L.L. and West Virginia Paving's negligent work. *See* ECF 1-4 ¶¶ 13–14. She sued both businesses in West Virginia state court. Compl. ¶ 27. After Smith and West Virginia Paving settled, West Virginia Paving was dismissed from the lawsuit. *See id.* ¶ 31. A.L.L., however, filed a third-party complaint against West Virginia Paving, seeking to require West Virginia Paving to defend and indemnify A.L.L. against Smith's claims.[1] ECF 8 at 3.

---

[1] The third-party complaint was not mentioned in, nor attached to, Charter Oak's Complaint in this case. Instead, Liberty Mutual attached the third-party complaint to its Motion to Dismiss. *See* ECF 7-1. As Liberty Mutual correctly

As part of the subcontract, West Virginia Paving agreed to maintain liability insurance coverage for itself and A.L.L. *See* ECF 1-3 ("Subcontract") §§ 3.A.7, 3.B. West Virginia Paving purchased insurance from Liberty Mutual. *See* ECF 1-2 at 13.[2] The insurance policy covers "any person or organization for whom" West Virginia Paving is "performing operations when [West Virginia Paving] and such person or organization have agreed . . . that such person or organization be added as an additional insured . . . ." *Id.* at 2252. The policy only covers such entities "with respect to liability for bodily injury or property damages caused, in whole or in part, by" West Virginia Paving's work. *Id.* (internal quotation marks omitted).

The policy provides that "the insurance afforded to [each] additional insured . . . [w]ill not be broader than that which [West Virginia Paving is] required by the contract or agreement to provide for such additional insured." *Id.* at 1663.

The subcontract requires West Virginia Paving to "provide coverage for liability arising from premises, operations, blanket contractual of a type that provides coverage for the indemnification clause in [the] subcontract . . . ." Subcontract § 3.A.7.

The indemnification clause requires West Virginia Paving "to indemnify and hold harmless" A.L.L. "from all claims, demands, actions, causes of action, damages, losses and expenses, including but not limited to attorneys' fees, arising or resulting (or alleged to arise or result), in whole or in part, from . . . [a]ny act or omission of [West Virginia Paving] . . . with

---

points out, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, while Liberty Mutual styles its Motion as a 12(b)(6) motion, other courts in this Circuit have not evaluated motions to dismiss based on abstention under Rule 12. *See, e.g.*, *AMEX Assur. Co. v. Giodano*, 925 F. Supp. 2d 733, 737 (D. Md. 2013). Since the third-party complaint is only relevant to Liberty Mutual's arguments on abstention, Rule 12 does not apply, and the Court may consider existence of the third-party complaint without converting Liberty Mutual's motion to dismiss into one for summary judgment.

[2] When citing to a specific page of this document, the Court will use the page number found on the top right-hand corner of the page.

respect to the Subcontract Work . . ., regardless of whether such claim . . . may have or is alleged to have arisen or resulted from any act or omission of" A.L.L. *Id.* § 11.3(a). The subcontract does not require West Virginia Paving to indemnify A.L.L. for "any claim . . . arising solely from the negligence of" A.L.L. *Id.*

A.L.L.'s insurer, The Charter Oak Fire and Insurance Company, asked Liberty Mutual to indemnify A.L.L. from Smith's claims and pay for A.L.L.'s defense. Compl. ¶ 36. According to Charter Oak, Liberty Mutual ignored this request. *See id.* Charter Oak sued, asking this Court to (1) declare that Liberty Mutual has a contractual duty to indemnify and defend A.L.L., *see id.* ¶ 46, and (2) award Charter Oak all sums it has incurred defending A.L.L., *see id.* ¶ 47.

Liberty Mutual now moves to dismiss Charter Oak's action. *See* ECF 7 at 1. It argues that the suit should be dismissed because (1) Liberty Mutual owes no duty to defend or indemnify A.L.L. under West Virginia Paving's insurance policy and (2) Charter Oak's action is duplicative of A.L.L.'s third-party complaint. *See id.*

## ANALYSIS

### A. Duty to Defend and Indemnify

According to Liberty Mutual, "the plain language in the [subcontract's] indemnity clause extends coverage only to A.L.L. Construction's liability resulting from the negligent conduct of West Virginia Paving." ECF 8 at 7. Liberty Mutual also asserts that A.L.L. "could never be potentially liable for West Virginia Paving's purported negligence by nature of the independent contractor relationship described in the [subcontract]." *Id.*

Both statements are correct. The subcontract only requires West Virginia Paving to indemnify A.L.L. against claims, demands, etc. "arising or resulting . . . in whole or in part" from West Virginia Paving's "act or omission." A.L.L., meanwhile, could not be held vicariously liable

for West Virginia Paving's negligence since "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor . . . ." *Shaffer v. Acme Limestone Co.*, 524 S.E.2d 688, 695 (W. Va. 1999) (quoting *Pasquale v. Ohio Power Co.*, 418 S.E.2d 738, 748 (W. Va. 1992)).

It does not follow, however, that the indemnity clause "could never be triggered . . . ." ECF 8 at 7. A.L.L. could face non-vicarious liability for damages that resulted, in part, from West Virginia Paving's negligence. This case presents a perfect example: Smith's state-court lawsuit alleges that negligence by both A.L.L. and West Virginia Paving caused her injuries. That means A.L.L. is facing potential liability *for* its own negligence which nevertheless *resulted from* West Virginia Paving's negligence.

Thus, under the plain meaning of the subcontract, West Virginia Paving has a duty to indemnify A.L.L. against Smith's claims. Since the subcontract required West Virginia Paving to insure A.L.L. to the extent of its duty to indemnify, Liberty Mutual also has a duty to indemnify A.L.L.

The insurance policy also requires Liberty Mutual to defend A.L.L. Under West Virginia law, "an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Silk v. Flat Top Const.*, 453 S.E.2d 356, 359 (W. Va. 1994). As explained above, Smith's claims are covered by the insurance policy. Accordingly, Liberty Mutual has a duty to defend A.L.L. The Court will not dismiss Charter Oak's action for failure to state a claim.

### B. Abstention

The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration . . . .". 28 U.S.C. § 2201(a). A

district court has discretion "to determine whether it will decide a declaratory judgment action over which it has jurisdiction." *Building Graphics, Inc. v. Lawson*, No. 3:22-0098, 2022 WL 2292284, at *1 (S.D. W. Va. June 24, 2022). "[A] district court should decide a declaratory judgment action if a judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue' and (2) 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding,'" ("*Quarles* factors"). *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). A court should not issue a declaratory judgment, however, "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Quarles*, 92 F.2d at 325.

> In deciding whether to hear such an action, a district court should also consider:
>
> (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems because of overlapping issues of fact or law; and (4) whether the declaratory judgment action is being used merely as a device for procedural fencing.

("*Nautilus* factors"). *Motorists Mut. Ins. Co. v. Frazier*, 623 F. Supp. 2d 727, 731 (S.D. W. Va. 2009) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)).

   1. Quarles *Factors*

Deciding this case would certainly "serve a useful purpose" and "afford relief . . . ." *Id.* A declaratory judgment would put Liberty Mutual on notice of its indemnification and defense obligations, or lack thereof. Also, while A.L.L.'s third-party action in state court may shed light on Liberty Mutual's obligations, a declaratory judgment in this case would still be useful since it would squarely address the extent to which Liberty Mutual's obligations mirror those of West Virginia Paving.

Liberty Mutual argues that the *Quarles* factors favor abstention because hearing this case would "result in wholly piecemeal litigation" and "interfere with the pending Underlying Action." ECF 8 at 11.

The Fourth Circuit has instructed lower courts to avoid "try[ing] a controversy by piecemeal . . . ." *Quarles*, 92 F.2d at 325. This Court, however, has adopted a "party-oriented definition of controversy . . . ." *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 692 (S.D. W. Va. 2001); *see also Brillhart v. Excess Ins. Co. of America*, 315 U.S. 491, 495 (1942) (instructing district courts to "ascertain whether questions *in controversy between the parties to the federal suit* . . . can better be settled in the pending proceeding in the state court) (emphasis added). Since the parties in this case are different from those in the one already pending in state court, this case presents a distinct "controversy."

The Fourth Circuit has also counseled against "interfer[ing] with an action which has already been instituted." *Quarles*, 92 F.2d at 325. Hearing this case would not "interfere" with the state-court action. It would not prevent the state-court proceedings from progressing, nor would it, as discussed below, have any preclusive effect on those proceedings. Accordingly, the *Quarles* factors weigh against abstention.

2. Nautilus *Factors*

The parties agree that the first *Nautilus* factor—the state's interest—is neutral with respect to the Court's decision on abstention. *See* ECF 8 at 12–13; ECF 9 at 16.

Liberty Mutual argues that the second factor—efficiency—weighs in favor of abstention. *See* ECF 8 at 13. As Liberty Mutual points out, the related state-court litigation has already been proceeding for several years. *See id.* It is likely, then, that the state court is more familiar with the factual and legal issues that this Court would have to address if it heard Charter Oak's request for

declaratory judgment. However, since Charter Oak also seeks monetary relief, this Court will need to familiarize itself with these issues anyway. More importantly, the ultimate question in this action—whether Liberty Mutual has a duty to defend and indemnify A.L.L.—will not be decided in the state-court proceeding at all. The state court is set to address the separate, albeit related, question of West Virginia Paving's duty to defend and indemnify. Accordingly, this factor weighs against abstention.

The third factor asks "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems . . . ." *Motorists Mut.*, 623 F. Supp. 2d at 731. While some "entanglement" could result from the Court deciding Charter Oak's declaratory-judgment action, that entanglement would not be "unnecessary." Even if the Court declined to provide a forum for the declaratory-judgment request, it would still need to evaluate Liberty Mutual's contractual obligations in order to take up Charter Oak's request for monetary relief. Doing so would cause no less entanglement. Accordingly, this factor weighs against abstention.

The fourth factor is whether the plaintiff is using the action "for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata . . . .'" *Nautilus*, 15 F.3d at 377 (quoting 6A James Wm. Moore et al., Moore's Federal Practice ¶ 57.08 (2d ed. 1993)). Res judicata applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004). While this action will overlap with A.L.L.'s third-party complaint, the two actions are not identical. Accordingly, Charter Oak cannot use this action for procedural fencing, and this factor weighs against abstention.

Since the *Quarles* and *Nautilus* factors both weigh against abstention, this Court will, in its discretion, hear Charter Oak's declaratory-judgment action.

## CONCLUSION

The Court **DENIES** Defendant's Motion to Dismiss (ECF 7).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 19, 2025

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE